UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON DIVISION

| | | |
|---|---|---|
| LAURAL LIRONES, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | CASE NO. 5:23-CV-02087-BMB |
| | ) | JUDGE BRIDGET MEEHAN BREENAN |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | **REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE,** |
| LEAF HOME WATER SOLUTIONS, LLC, | ) ) | **TO CERTIFY PURSUANT TO 28 U.S.C. § 1292(B)** |
| *Defendant.* | ) | |

## INTRODUCTION

Plaintiff concedes the provisions at issue are limited to "residential telephone subscribers". Plaintiff argues, however, that this term includes cellular telephone lines used as a residential (*i.e.*, non-business) line. Plaintiff argues: (i) the text of the TCPA supports this view and (ii) the FCC indicated that cellular telephone lines can be treated as residential numbers. As detailed in Leaf Home's Motion to Dismiss, and further below, Plaintiff's arguments are misguided.

Plaintiff ignores the text of the TCPA itself, which treats cellular and residential lines as two *distinct* lines. Cellular and residential lines are regulated by separate subsections of the TCPA, and the FCC's authority as to each is separately set out. This is why the FCC's view is *not* rooted in text, but in policy. Neither Plaintiff nor the FCC can conflate cellular and residential lines without rewriting the statute. While Plaintiff (and the FCC) may prefer a different policy, that is a matter for Congress. The provisions at hand are limited to *residential*, *i.e.*, landline, phone lines.

Even if Plaintiff were correct, however, it is indisputable that (i) courts within this Circuit are divided, (ii) that appellate courts have not opined directly on this issue, (iii) that the issue at hand is a controlling question of law and (iv) that a decision in Leaf Home's favor would end this case. Plaintiff fails to seriously challenge Leaf Home's request for certification under 28 U.S.C.

1

§ 1292(b). Plaintiff contends certification is improper for precisely one reason: that some trial courts have sided with Plaintiff's view. As Leaf Home pointed out in its Motion, many courts have adopted Leaf Home's view. More fundamentally, however, the 1292(b) certification factors are met here in spades. This is an issue crying out for appellate authority (for which there is *none*) and is likely to escape review absent (i) granting a motion to dismiss or (ii) 1292(b) certification.

## DISCUSSION

### I. THE PLAIN LANGUAGE OF THE TCPA PRECLUDES PLAINTIFF'S CLAIMS.

At the outset, Plaintiff spends two pages arguing that all she needs to allege to state a claim is (i) Plaintiff registered her number on the do-not-call registry and (ii) she uses her number for residential and household purposes. (Dkt. 17 at 2-4.)[1] Putting aside that Plaintiff relies on the pre-*Iqbal-Twombly* motion to dismiss standard, Plaintiff's argument in this respect misses the point. The issue before this Court is whether a cellular telephone line—which Plaintiff concedes is at issue—can constitute a residential telephone line under the TCPA. The answer is clearly no.

#### A. Plaintiff Ignores the Plain Language of the TCPA.

Plaintiff contends that a "textualist reading" of the TCPA supports her view that "residential telephone subscriber" includes cellular telephone lines. (Dkt. 17 at 4.) Plaintiff, however, **fails to discuss the TCPA itself** (found at 47 U.S.C. § 227). This is a fatal error.

It is axiomatic that "[t]he plain language of a statute is the starting point for its interpretation" and "should also be the ending point if the plain meaning of that language is clear." *United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021) (internal quotations and citation omitted). It is further clear that "[a] statute must, if possible, be construed in such a way that every word has effect." *Id.* Logically, then, the focal point of analysis **should be the statute itself**.

---

[1] Plaintiff omits any reference to the facts needed to allege her second claim under 47 C.F.R. § 64.1200(d), which has nothing to do with registering on the national do-not-call registry.

The Supreme Court recently had occasion to interpret the TCPA. In *Facebook v. Duguid*, the Supreme Court evaluated the meaning of the term "automatic telephone dialing system", and did so using conventional rules of statutory interpretation using the text itself. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021). The Supreme Court did not turn to other statutes or regulations, and rejected reliance on policy-driven interpretations, noting the TCPA may be "senescent" and plaintiff's "quarrel" was with Congress. *See id.* at 409.

The DC Circuit ruled similarly in rejecting an FCC rule that contravened the plain text of the TCPA. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1080 (D.C. Cir. 2017). In *Bais Yaakov*, the FCC rejected an FCC rule it determined was contrary to the *plain language* of the TCPA itself. The court found that "[t]he text of the [TCPA] provides a clear answer to the question presented in this case." *Id.* at 1082. The court rejected the notion that the FCC "may take an action . . . so long as Congress has not prohibited the agency action in question" as "backwards as a matter of basic separation of powers and administrative law." *Id.* It likewise rejected the FCC's policy-based rationales for its action, holding that the FCC is restricted by the text of the TCPA in the authority it has, and cannot use policy goals to override text. *Id.* at 1083.

The TCPA itself is clear as to the FCC's relevant authority: the FCC has the authority to initiate rulemaking concerning "**residential telephone subscribers'** privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added); *see also* 47 U.S.C. § 227(c)(3). This is exactly why the regulations at issue, 47 C.F.R. §§ 64.1200(c)(2), (d) were written restricted to residential telephone subscribers.

The remaining issue then is to determine what "residential telephone subscribers" means. The TCPA provides the needed guidance, as the TCPA separately discusses—and separately regulates—cellular and residential lines. The distinct and separate treatment of these two lines

drives the resolution of this case because *each word* must have effect. *See Edington*, 992 F.3d at 556. By way of example, 47 U.S.C. § 227(b)(1)<u>(A)</u> prohibits certain autodialed and prerecorded calls to <u>cellular telephone numbers</u>. On the other hand, 47 U.S.C. § 227(b)(1)<u>(B)</u> prohibits certain calls "to any <u>residential telephone line</u> using an artificial or prerecorded voice . . . .". Cellular and residential lines are also subject to different provisions regarding regulations. For example, 47 U.S.C. § 227(b)(2)<u>(B)</u> provides the FCC's broad authority to issues regulations concerning 47 U.S.C. § 227(b)(1)(B), the *residential lines* provision. On the other hand, 47 U.S.C. § 227(b)(2)<u>(C)</u> provides a narrower authority to issue regulations concerning cellular telephone numbers under 47 U.S.C. § 227(b)(2)(A). These two terms—cellular and residential lines—must carry distinct meanings. *See also* S. REP. 102-178, 6 (separately discussing *cellular lines* and *calls to homes*).

The cellular / residential distinction is one with a huge difference. Calls made using an autodialer are unlawful as to cellular lines, *but not* as to residential lines. *See, e.g.*, *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018) ("Unlike with the autodialer restrictions on calls to wireless numbers, callers are free to use ATDS equipment to dial residential lines as long as no 'artificial or prerecorded voice' is used."). The FCC has long separately regulated and separately treated residential and cellular telephone lines. *See, e.g.*, *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1859 n.4 (2012) ("For ease of reference in this Report and Order and to avoid confusion as to which rules apply to calls directed to a cellular telephone number (wireless) or to a residential telephone line (wireline), we will refer to such calls as being placed to a 'wireless number' and to a 'residential line,' respectively."). For example, the FCC has treated calls made on behalf of tax exempt entities and healthcare calls entirely differently when placed to residential or cellular lines. *See* 47 C.F.R. § 64.1200(a)(2) (allowing such calls to cellular lines with prior express consent); 47 C.F.R. §

4

64.1200(a)(3) (providing broad exemptions for such calls to residential lines). Finding the term residential can encompass cellular lines would wreak havoc within the TCPA and its regulations.

Common tools of statutory construction—giving effect to each word, reading the statute as a whole, *expressio unius*—require the distinct treatment of cellular and residential lines. A cellular line is a wireless line. A residential line is a landline. *See, e.g.*, *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020) ("[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere."); *Maraan v. DISH Network*, No. 13-00436, 2014 WL 12839682, at *3 (S.D. Ohio Apr. 22, 2014) ("That some individuals currently use only a cellular telephone at their home rather than the once traditional landline does not convert their wireless device into a 'residential telephone line[.]'"); *Gaker v. Q3M Ins. Sols.*, No. 22-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) (report and recommendation).[2]

This is not controversial. Indeed, the FCC itself has often referred to residential lines as *wirelines*. In 2014, the FCC stated "[w]e use 'residential' to mean 'residential wireline' consumers for purposes of this order, ***and to be consistent with the TCPA's terminology***." *Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 F.C.C. Rcd. 3432, 3439 (2014) (emphasis added); *In the Matter of Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 27 F.C.C. Rcd. at 1859 n.4 (referring to residential as wireline); *In the Matter of Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1841 (2012) (same); *In the Matter of Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 25 F.C.C. Rcd. 1501, 1511 (2010) (same).

---

[2] Leaf Home identified numerous cases in its Motion that have dismissed the claims asserted here when brought as to cellular lines. (Dkt. 12 at 4-5.) To avoid repetition, Leaf Home does not restate those cases here, but incorporates them by reference.

### B. Plaintiff Misstates the Statutory Construction Analysis.

Plaintiff's "textual" analysis suffers additional critical defects. For one, it does not grapple with the fact that making cellular and residential interchangeable would have to apply with equal force throughout the TCPA and its regulations. By Plaintiff's view, cellular telephone lines should be equally subject to exemptions the FCC adopted at 47 C.F.R. § 64.1200(a)(3), which on their face apply only to residential lines. The TCPA's provisions at 47 U.S.C. § 227(b)(1)(A) and 47 U.S.C. § 227(b)(1)(B) would be virtually interchangeable. This would be an untenable result.

Plaintiff's approach also improperly reads a single word (residential) in isolation.[3] *See, e.g.*, *Smith v. United States*, 508 U.S. 223, 233 (1993) ("Just single word cannot be read in isolation, nor can a single provision of a statute"). "Residential telephone" must be read in *context* relative to the separate use of *cellular* telephones. Plaintiff also excises and separately analyzes the word "residential" unmoored from context. (Dkt. 17 at 5.) The term is "residential telephone", which describes a *type of phone* (not where the phone happens to be when used, or how one uses a phone). Much like a "ski jacket" is a type of jacket or a "running shoe" is a type of shoe. The word "ski" or "running" do not describe *locations* or *uses*, they describe a type of jacket and a type of shoe.

Plaintiff also argues "Congress explicitly acknowledged that the [do-not-call provisions were] applicable to 'wireless telephone numbers' . . . ." (Dkt. 17 at 7.) Plaintiff cites nothing for this flatly false proposition. If Plaintiff's analysis were correct, of course, there would be no need for the FCC to have adopted its 2003 guidance or 47 C.F.R. § 64.1200(e).

---

[3] Plaintiff's citation to *Krakauer* is curious as the decision *supports Leaf Home*. (Dkt. 17 at 10, citing *Krakauer v. Dish Network*, 925 F.3d 643, 657 (4th Cir. 2019).) *Krakauer* nowhere analyzes the cellular / residential issue, but does analyze the term "person" in 47 U.S.C. § 227(c)(5), distinguishing it from "subscriber" used elsewhere in the TCPA. *Krakauer*, 925 F.3d at 657. The court determined "Congress specifically referenced 'subscribers' in other parts of the TCPA . . . , but did not do so here. We assume that Congress chooses its words carefully . . . ." *Id.* The same is true here when evaluating the differing uses of cellular and residential phone lines.

As a final matter, Plaintiff's reference to entirely different *regulations* found at 47 C.F.R. § 64.2305 (which were promulgated to implement 47 U.S.C. § **222**) as indicative of *Congress's* earlier intent under 47 U.S.C. § **227** is improper.  *See, e.g.*, *Hadden v. United States*, 661 F.3d 298, 303 (6th Cir. 2011) ("But our task in this case is not to fashion a sort of judicial string theory, under which we develop universal principles that harmonize different statutes with different language.").  It would be specious even to rely on the views of a subsequent Congress.  *See, e.g.*, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 520 (1992).  The TCPA provides the roadmap and the context; there is no need to resort to extraneous resources and irrelevant regulations.

**C.   Plaintiff Ignores the Supreme Court's *PDR Network* Decision.**[4]

Plaintiff contends the Hobbs Act prevents this Court from "invalidating the FCC's 2003 Order."  (Dkt. 17 at 7-8.)[5]  Plaintiff makes two crucial errors.  First, Plaintiff wholesale ignores the Supreme Court's *PDR Network* decision, despite that it is a *Supreme Court* decision regarding the Hobbs Act in the TCPA context.  Plaintiff does not address the *PDR Network* analysis, and thus *waives* opposition to Leaf Home's assessments that the FCC's 2003 Order is not binding because (i) it is *interpretive* and (ii) Leaf Home had no prior opportunity to seek review.  *See PDR Network, LLC v. Carlton & Harris Chiropractic*, 139 S. Ct. 2051, 2055 (2019); *Warren Twp., Tuscarawas Cnty., Ohio v. Kinder Morgan Utopia*, No. 20-1199, 2022 WL 971528, at *2 (N.D.

---

[4]   The Parties are briefing a Motion to Stay concerning *Chevron*.  (Dkt. 13.)  While Leaf Home asserts the TCPA is unambiguous and *Chevron* is inapplicable, if this Court were inclined to defer to the FCC here, a stay pending the Supreme Court's guidance would be prudent.

[5]   Plaintiff's citation to *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 887 (6th Cir. 2020) does not help her.  (Dkt. 17 at 8.)  The section Plaintiff cites involves a discussion of the procedural history of the *PDR Network* case, not a holding or analysis by the Sixth Circuit.  This case helps Leaf Home, as the Sixth Circuit chose to ignore an FCC pronouncement entirely.  *See* 962 F.3d at 889.  If anything, though, the fact that the Sixth Circuit has not yet evaluated *PDR Network* counsels in favor of 1292(b) certification.

Ohio Mar. 31, 2022) ("A party waives opposition to an argument by failing to address it in her responsive brief.").

Second, Leaf Home is not asking this Court to invalidate anything. *PDR Network*, 139 S. Ct. at 2063 (Kavanaugh, J. concurring with three other justices) ("[T]he district court does not 'determine the validity' of an order when the district court agrees or disagrees with the agency interpretation in an enforcement action."). Leaf Home is simply asking this Court to interpret the TCPA. *See Gorss Motels, Inc. v. FCC*, 20 F.4th 87, 95 (2d Cir. 2021) ("This opinion should not be over-read to suggest that if a Hobbs Act court upholds a challenged order, the order is immune from challenge in subsequent enforcement proceedings. Such a result would raise due process concerns, and it does not appear that Congress contemplated such a sweeping effect when it enacted the Hobbs Act.") (citing *PDR Network*, 139 S. Ct. at 2062-63 (Kavanaugh, J. concurring)).

In the few years following *PDR Network*, courts have felt unconstrained by FCC orders, under *PDR Network* or otherwise. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 264 (4th Cir. 2020) (applying *PDR Network* on remand); *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 832 (7th Cir. 2023) (disregarding an FCC interpretation that "conflicts with the statutory text" of the TCPA); *Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, No. 18-1903, 2020 WL 2793954, at *14-20 (E.D. Pa. May 29, 2020).

D.   **Policy Goals Cannot Alter the Plain Language of the TCPA.**

Plaintiff turns to policy rationales for expanding "residential telephone subscriber" to include cellular telephones. (*See* Dkt. 17 at 7, 10-12.) Plaintiff contends Congress could have specifically *precluded* the FCC from including cellular telephone lines within the regulations issued under 47 U.S.C. § 227(c). (*See id.* at 7, 10.) This is the *exact* argument the D.C. Circuit rejected in *Bais Yaakov*. *See* 852 F.3d at 1082 ("That theory has it backwards . . . . The FCC may only take action that Congress has authorized."). Congress knew what cellular phone lines were,

8

and drafted provisions covering such lines and provided specific regulatory authority over such lines. Congress chose *not* to do so under 47 U.S.C. § 227(c); Congress need not do more.

Policy-based rationales cannot alter the plain text of the TCPA—the Supreme Court and D.C. Circuit have made that crystal clear. *See, e.g.*, *Duguid*, 592 U.S. at 409 ("Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked."); *Bais Yaakov*, 852 F.3d at 1083 ("[T]he fact that the agency believes its Solicited Fax Rule is good policy does not change the statute's text."). The text of the TCPA itself controls. To that end, Plaintiff's view that "residential" was intentionally meant to be broad by a clairvoyant Congress (predicting technologies not yet in use) is absurd. (Dkt. 17 at 5.) The Supreme Court put to bed the idea that Congress wrote a malleable TCPA. *See Duguid*, 592 U.S. at 409 ("'Senescent' as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of [the TCPA]."). If the TCPA is to be altered, it must be Congress that does so.

**II.  THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION WARRANTING IMMEDIATE APPEAL TO RESOLVE THIS KEY ISSUE.**

Plaintiff does not challenge (i) that the crux of the dispute at hand is a controlling issue of law and (ii) that immediate appeal could end this case outright. Plaintiff simply argues that there is no substantial ground for difference of opinion. (Dkt. 17 at 15.) This is incorrect.

At the outset, Leaf Home readily recognized in its Motion that contrary authority existed—indeed, the split in authority (including the *Tsolumba* case from this Court) motivated its alternative 1292(b) request. (*See* Dkt. 12 at 19-20.) It cannot be disputed that district courts have reached conflicting outcomes on this issue. Importantly, the cases Plaintiff cites generally predate *PDR Network*, do not evaluate *PDR Network*, or find the FCC's 2003 guidance persuasive (if not controlling). (*See* Dkt. 17 at 8, 10, 12, 13.) In short, Plaintiff's authority generally declines to conduct a textual analysis of the TCPA—the kind of analysis Circuit Courts are now encouraging.

9

*See, e.g.*, *Ambassador Animal Hosp.*, 74 F.4th at 832. Plaintiff's authority also demonstrates just how critical and recurring this issue is. Immediate appeal will finally allow for appellate authority.

Plaintiff's analysis, in any event, is misplaced. There is **no** appellate authority on this issue. The only appellate cases Plaintiff cites do not analyze the issue at hand. *Chennette v. Porch.com* does not help because the "defendants conceded that cell phones can be 'residential' for purposes of § 227(c)." *See* 50 F.4th 1217, 1223 (9th Cir. 2022). Nor does Plaintiff's citation to *Krakauer v. Dish Network* help Plaintiff. *See* 925 F.3d at 657. *Krakauer* nowhere discussed cellular telephone lines (or so much as mentioned them), though it did specifically mention "home telephone number". *Id.* To be clear, there is **no** appellate authority, much less controlling appellate authority, directly addressing whether a cellular telephone can be a residential line.

The Sixth Circuit has made clear that a substantial ground for difference of opinion exists where "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (internal quotations and citation omitted). There need not even be *any* district court authority for this prong to apply, much less conflicting authority. *See, e.g.*, *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017). Here, in addition to conflicting trial court rulings in this District and elsewhere, there is no controlling precedent on this recurring TCPA issue and, indeed, no Circuit authority at all directly resolving this issue. *See, e.g.*, *Arab Am. C.R. League v. Trump*, No. 17-10310, 2019 WL 5684371, at *4 (E.D. Mich. Nov. 1, 2019) (noting the lack of controlling precedent). Such authority is desperately needed for this recurring and key issue under the TCPA.

## **CONCLUSION**

For the foregoing reasons, Leaf Home respectfully requests the Court (i) dismiss Plaintiff's

Complaint with prejudice; (ii) in the alternative, certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and (iii) award all other relief it deems equitable and just.

        Respectfully submitted,

        */s/ Mark E. Eisen*
        NORA K. COOK (0086399)
        ALLYSON R. CADY (0098830)
        **BENESCH, FRIEDLANDER, COPLAN &**
          **ARONOFF LLP**
        127 Public Square, Suite 4900
        Cleveland, Ohio 44114
        Telephone: 216.363.4500
        Facsimile: 216.363.4588
        Email: ncook@beneschlaw.com
                acady@beneschlaw.com

    *--and--*

        MARK S. EISEN (*admitted pro hac vice*)
        **BENESCH, FRIEDLANDER, COPLAN &**
        **ARONOFF, LLP**
        71 South Wacker Drive, Suite 1600
        Chicago, Illinois 60606-4637
        Telephone: 312.212.4949
        Facsimile: 412.767.9192
        Email: meisen@beneschlaw.com

    *Attorneys for Leaf Home Water Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2024 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

*/s/ Mark E. Eisen*