UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURAL LIRONES, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO. 5:23-cv-02087 |
| Plaintiff, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| LEAF HOME WATER SOLUTIONS, LLC, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

Before this Court is Defendant's motion to dismiss or, in the alternative, to certify the Court's order for interlocutory appeal.  (Doc. No. 12.)  Plaintiff opposed the motion (Doc. Nos. 17, 23), and Defendant replied (Doc. Nos. 20, 22).  For the reasons below, the motion is DENIED.

I.      **BACKGROUND**

A.      **Facts**

Plaintiff Laural Lirones's ("Plaintiff") class action complaint seeks "to stop the Defendant from violating [the] Telephone Consumer Protection Act ('TCPA') by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ('DNC') and from continuing to call consumers who have asked for the calls to stop."  (Doc. No. 1 at 1.)[1]  Plaintiff alleges Leaf Home Water Solutions, LLC ("LHWS" or "Defendant") "solicits

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

business by placing telephone sales calls to consumers" and "places telemarketing calls to phone numbers that are registered on the DNC, as per Plaintiff's experience." (*Id.* ¶¶ 14, 15.)

Plaintiff is the subscriber and sole user of a cellular telephone number ending with 8581. (*Id.* ¶ 21.) Plaintiff registered her cellular telephone number on the DNC on July 19, 2023. (*Id.* ¶ 22.) The Complaint alleges that "Plaintiff Lirones uses her cell phone number for personal and household use only as one would use a residential landline." (*Id.* ¶ 23.) The Complaint details several unwanted communications to Plaintiff's cellular telephone number. (*Id.* at 7-9.) Plaintiff asserts:

> The unauthorized telephonic sales calls that Plaintiff received from Defendant, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

(*Id.* ¶ 33.)

Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant LHWS called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

> **<u>Internal Do Not Call Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called their residential telephone line at least two times (2) including at least once after the consumer had communicated their wish to not receive any further calls from the Defendant (3) for substantially the same reason Defendant called the Plaintiff.

(*Id.* ¶ 35.)

Plaintiff's claims arise under § 227(c) of the TCPA and the regulations at 47 C.F.R. § 64.1200(c) and (d).  (*Id.* at 12-15.)

### B.     Procedural Posture

On January 23, 2024, Defendant filed a Rule 12(b)(6) motion to dismiss asserting that "Plaintiff has no claims as a matter of law because she solely alleges calls to a cellular telephone number."  (Doc. No. 12 at 70.)  Defendant contends that a cellular telephone user is not a "residential telephone subscriber" under § 227(c).  (*Id.* at 71.)  In the alternative, if the motion to dismiss is denied, Defendant "requests that this Court certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) to enable the Sixth Circuit to determine whether a cell phone can qualify as a residential number."  (*Id.* at 55.)

On January 30, 2024, Defendant moved to stay the case pending the Supreme Court's forthcoming decisions in *Relentless, Inc. v. United States Dep't of Com.*, 62 F.4th 621 (1st Cir. 2023), *cert. granted*, 144 S. Ct. 325 (2023) and *Loper Bright Enterprises, Inc. v. Raimondo*, 45 F.4th 359 (D.C. Cir. 2022), *cert. granted*, 143 S. Ct. 2429 (2023).  (Doc. No. 13.)  Plaintiff responded to the motion to dismiss and motion to stay (Doc. No. 17), and Defendant replied (Doc. Nos. 19, 20).

On May 10, 2024, the Court granted Defendant's motion and stayed the case until the conclusion of the Supreme Court's October 2024 term.  On July 1, 2024, Defendant moved to lift the stay following the Supreme Court's June 28, 2024 decision *in Loper Bright Enterprises, Inc. v. Raimondo*, 144 S. Ct. 2244 (2024) ("*Loper*").  (Doc. No. 21.)  The Court lifted the stay on July 2, 2024, and the parties submitted supplemental briefing addressing *Loper*.  (Doc. Nos. 22, 23.)  On August 9, 2024, Plaintiff filed notice of supplemental authority, *Lyman v. QuinStreet,*

*Inc.*, No. 23-cv-05056-PCP, 2024 WL 3406992 (N.D. Cal. July 12, 2024), which was issued after the supplemental briefing.  (Doc. No. 24.)

## II.    LAW AND ANALYSIS

### A.    Standard of Review

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim.  *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556). Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  In such a case, the plaintiff has

4

not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

A complaint need not detail all the particulars of a plaintiff's claim.  However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  at 678 (citing *Twombly*, 550 U.S. at 555).

**B.**     **The TCPA**

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") in part to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) ("Congress reported many consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes."  (quotations and alterations omitted)).

Section 227(b) of the TCPA renders it "unlawful for any person . . . to make any call . . . using any automatic telephone dialing system [('ATDS')] or an artificial or prerecorded voice," except in an emergency or with the recipient's prior consent, to several enumerated categories of phones.  47 U.S.C. § 227(b)(1)(A).  For example, the prohibition on ATDSs or prerecorded calls extends to "any emergency telephone line," "the telephone line of any guest room or patient room of a hospital," and "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service. . . ." *Id.* Section 227(b) further forbids "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message."  47 U.S.C. § 227(b)(1)(B).  The

statute also proscribes the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," except where *inter alia* the sender and recipient have an "established business relationship."  47 U.S.C. § 227(b)(1)(C).

Section 227(c) of the TCPA is addressed to telephone solicitations that intrude on the privacy of the subscriber, regardless of whether they are transmitted by an ATDS or an artificial or prerecorded voice.   In Section 227(c), Congress authorized the Federal Communications Commission ("FCC") to promulgate regulations to achieve the TCPA's goals.  47 U.S. § 227(c)(3).  Rather than dictating the contents of the regulations—as Congress did in § 227(b)— § 227(c) simply "permit[s]" the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and prohibiting telephone solicitation to "any subscriber included in such database."  47 U.S.C. § 227(c)(3).  Telephone solicitation is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. . . ."  47 U.S.C. § 227(a)(4).  Section 227(c) also confers a private cause of action on a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection. . . ."  47 U.S.C. § 227(c)(5).

The FCC's implementing regulations provide:

> No person or entity shall initiate any telephone solicitation to: ... (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

47 C.F.R. § 64.1200(c).  Additionally, the FCC's regulations prohibit any "person or entity" from "initiat[ing] . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d).  At minimum, those procedures must include the maintenance of "a written policy, available upon demand, for maintaining a do-not-call list," 47 C.F.R. § 64.1200(d)(1), and trainings for telemarketers on "the existence and use of the do-not-call list," 47 C.F.R. § 64.1200(d)(2).

Furthermore, 47 C.F.R. § 64.1200(e) provides:

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

The 2003 TCPA Report and Order—incorporated into the regulations by § 64.1200(e)—creates a presumption that a cellular telephone registered on the Do Not Call Registry is a residential phone:

> As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("2003 Order").

C.       The Parties' Arguments

Defendant makes the following three arguments in support of its motion to dismiss: (1) "[t]he plain language of 47 U.S.C. § 227(c)(1) and 47 C.F.R. §§ 64.1200(c)-(d) apply solely to residential telephone subscribers.  Because the [TCPA] distinguishes, in multiple provisions, cellular from residential lines, it is clear that the term 'residential telephone subscriber' cannot include cellular telephone lines"; (2) "the Court is not bound by the FCC's language interpreting the phrase 'residential telephone subscriber' found in" the 2003 Order; and (3) "[t]he phrase 'residential telephone subscriber' is unambiguous" and "is not entitled to *Chevron* deference." (Doc. No. 12 at 66, 71-85.)  In the alternative, Defendant requests that if the Court denies its motion to dismiss, the Court "should certify its Order pursuant to 28 U.S.C. § 1292(b)."  (*Id.* at 66, 85-87.)

In response, Plaintiff argues her allegations that her phone number has been on the DNC since July 19, 2023, and that she uses that number "for personal and household use only," are sufficient to state her TCPA claim.  (Doc. No. 17 at 114.)  Plaintiff asserts: (1) that Defendant's argument that a cellular telephone user cannot be a "residential telephone subscriber" is inconsistent with the text of the TCPA and canons of statutory construction (*id.* at 116-18); (2) that the Hobbs Act precludes the Court from invalidating the FCC's 2003 Order (*id.* at 119-20); and (3) that "courts have repeatedly recognized" that the DNC protections apply to cellular telephones (*id.* at 120-26).  Plaintiff also argues that Defendant has not met its burden to demonstrate that interlocutory review is warranted.  (*Id.* at 126-27.)

The parties submitted supplemental briefing following the Supreme Court's decision in *Loper*.  (*See* Doc. Nos. 22-23.)  Defendant argues that because "'*Chevron* is overruled,' [t]he Court owes no deference to the FCC's prior pronouncements that a cell phone may qualify as

'residential' under Section 227(c)." (Doc. No. 22 at 222.) (citing *Loper*, 144 S. Ct. at 2273).
Instead, "[t]he question at hand turns on the reading the court would have reached if no agency
were involved." (*Id.* (citing *Loper*, 144 S. Ct. at 2266) (citations omitted).)  Plaintiff argues the
Court can determine the DNC protections apply to cellular telephone "based exclusively on the
TCPA's statutory text," that "the only district court to decide this issue post *Loper* reached
exactly that conclusion," and "the Hobbs Act ensures that final FCC Orders, like the 2003 Order
. . . remain valid and not subject to challenge in a district court regardless of the elimination of
*Chevron* deference." (Doc. No. 23 at 226-27.)

      **D.**    **Discussion**

          **1.**    **The TCPA's DNC Protections Apply to Cellular Telephones**

      To state a claim under 47 U.S.C. § 227(c), a plaintiff must allege she: (A) is a residential
telephone subscriber; (B) registered that telephone number with the Do Not Call Registry; and
(C) nonetheless received an unsolicited call to that number initiated by a person or entity.  47
C.F.R. § 64.1200(c)(2).  The key inquiry is whether a cellular telephone user can qualify as a
"residential telephone subscriber."

      Defendant argues § 227(c) and its regulations "apply exclusively to *residential* telephone
lines." (Doc. No. 12 at 71.)  According to Defendant, "[t]he TCPA distinguishes *residential*
from *cellular* telephones." (*Id.* at 73.)  Defendant points to the fact that "this Court similarly
acknowledged the distinction in denying a motion concerning this very issue." (*Id.* (citing
*Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-cv-00712, 2023 WL 6146644, at *4 (N.D. Ohio
Sept. 20, 2023).)  Defendant contends "[t]his statutory distinction must be respected." (*Id.* at
74.)  Defendant also argues that this distinction drives the resolution of this case because each

word must have effect under the *expressio unius* canon of statutory construction.  (Doc. No. 20 at 152-54.)

Defendant claims many district courts have dismissed § 227(c) claims brought by cellular telephone users.  (*See* Doc. No. 12 at 71-72.)  However, the cases Defendant cites, particularly those from the Middle District of Tennessee, are not persuasive.  Most of the cases Defendant cites involve the same serial plaintiff.  (*Id.*)  In the first instance, in *Cunningham v. Rapid Response Monitoring Servs., Inc.*, the court dismissed the § 227(c) claim because the plaintiff did not plead that the cellular telephone number called was used for residential purposes.  251 F. Supp. 3d 1187, 1201 (M.D.Tenn.2017) ("in some cases, an individual who relies on a cellular phone may nevertheless fall within the definition of a 'residential telephone subscriber'" under the Act . . . Cunningham, however, has pled no facts sufficient for this Court to draw that conclusion here") (citations omitted).[2]  The subsequent cases with the same plaintiff cite to that decision.[3]

Plaintiff argues that Defendant's reading of the term "residential" to exclude cellular telephones used for personal, household purposes "is inconsistent with multiple canons of construction."  (Doc. No. 17 at 116-17.)  Plaintiff contends that Congress's use of the term "residential" refers to the type of user (i.e., personal or business), not "the type of technology that

---

[2] In fact, Defendant even concedes that the court in *Cunningham v. Rapid Response Monitoring Servs., Inc.* acknowledged "some courts have included cell phones where there was factual support that the phone was used for residential purposes."  (Doc. No. 12 at 71 n.1.)
[3] *See Cunningham v. Britereal Mgmt., Inc.*, 4:20-cv-144, 2020 WL 7391693, at *4, 7 (E.D. Tex. Nov. 20, 2020), *R&R adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020); *Cunningham v. Politi*, 4:18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), *R&R adopted*, 2019 WL 2526536 (E.D. Tex. June 19, 2019); *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *R & R adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018); *Cunningham v. Spectrum Tax Relief, LLC*, No. 3:16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017), *R & R adopted*, 2017 WL 3220411 (M.D. Tenn. July 28, 2017).

the technology that the consumer chooses to use." (*Id.* at 117-18.)  Plaintiff further argues that courts have repeatedly recognized that the TCPA's DNC protections apply to cellular telephones. (*See id.* at 120-22 (citing cases).)

Both district courts that have considered this issue post-*Loper* have reached the same conclusion: cellular telephone users can be considered "residential telephone subscribers" under § 227(c).  *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628, at *9 (S.D.N.Y. July 3, 2024) ("The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone."); *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ("the statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of 'residential telephone subscribers'").

The TCPA's distinction between residential lines and cellular telephones that this Court recognized in *Tsolumba* is consistent with this reading of the statute.  *See Tsolumba*, 2023 WL 6146644, at *5.  Although Congress addressed both "cellular telephone service[s]" and "residential telephone line[s]" in § 227(b), that section forbids the use of artificial and prerecorded messages to enumerated categories of phone technologies.  *See Cacho*, 2024 WL 3293628, at *6; *Lyman*, 2024 WL 3406992, at *3.  On the other hand, § 227(c) provides protections to a certain type of phone user, regardless of the technology.

> Defendant's *expressio unius* argument therefore amounts to a category mistake: Cellular telephones . . . are a kind of telephonic communications technology.  A 'residential subscriber,' by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology.  Thus, a 'residential subscriber' and a cellular telephone are not members of the same genus.

*Cacho*, 2024 WL 3293628, at *6-7.  The inclusion of the term "cellular telephone" in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s protections; "Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone *line*,' as Congress used that term in the preceding subsection." *Cacho*, 2024 WL 3293628, at *7 (citations omitted).

Additionally, Congress uses the word "line" in § 227(b) in making it unlawful to initiate a telephone call to a "residential telephone line" with an artificial or prerecorded voice.  47 U.S.C. § 227(b)(1)(B).  In § 227(c), Congress directed the FCC to regulate with respect to the privacy rights of "residential telephone subscribers."  47 U.S.C. § 227(c)(1).  If the term "residential" referred to the telephone technology, then "Congress's reference to a residential telephone 'line' [in § 227(b)] would be surplusage, as a residential telephone would necessarily be a landline instead of a cellphone."  *Cacho*, 2024 WL 3293628, at *7.  It follows that Congress's omission of the word "line" and use of the word "subscriber" in § 227(c) therefore refers to the type of subscriber and the function for which the subscriber uses the phone rather than the type of technology.  *Id.* at *8.  Furthermore, according to the TCPA's plain language and dictionary definitions of "residence" and "subscriber," "a residential subscriber is one who maintains a phone for residential purposes . . . i.e., for personal activities associated with his or her private, domestic life."  *Id.* (citations and quotations omitted).

Defendant argues that while this Court relied on the 2003 Order in its previous decision on this issue, the 2003 Order is no longer entitled to deference post-*Loper*.  (*See* Doc. No. 22 at 222 (citing *Tsolumba*, 2023 WL 6146644, at *5).)  But consideration of the 2003 Order is still

appropriate under *Loper*.  In *Loper*, the Supreme Court held that "although an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise."  144 S. Ct. at 2267 (citations and quotations omitted).  "[J]udges need only fulfill their obligations under the APA to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA."  *Id.* at 2268.

Here, Congress expressly conferred discretionary authority on the FCC to flesh out the TCPA.  *See* 47 U.S.C. § 227(c). *Lyman*, 2024 WL 3406992, at *4.  "Using its discretion within the boundaries of its delegation," the FCC has created a presumption that a cellular telephone registered on the DNC is a residential phone.  *Lyman*, 2024 WL 3406992, at *4; *see also* 2003 Order; 47 C.F.R. § 64.12000(e);  "The FCC's interpretation 'rests on factual premises within the agency's expertise,' thus giving its interpretation 'particular power to persuade, if lacking power to control.'"  *Lyman*, 2024 WL 3406992, at *4 (quoting *Loper*, 144 S. Ct. at 2267).  The Court finds the FCC's interpretation of "residential subscriber" persuasive.

Ultimately, as Defendant points out, "[t]he question at hand turns on the reading the court would have reached if no agency were involved."  (Doc. No. 22 at 222 (citing *Loper*, 144 S. Ct. at 2266) (citations and quotations omitted).)  Here, based on the text of the statute and tools of statutory interpretation, the Court would reach the same conclusion in the absence of any FCC interpretation of the term "residential subscriber."  *See Lyman*, 2024 WL 3406992, at *4 ("In any event, however, the Court would reach the same conclusion in the absence of any FCC interpretation of the TCPA's statutory text.").  Finally, because the Court concludes that Plaintiff's allegations satisfy both the plain text of the TCPA and the FCC's regulations, the

Court need not determine whether the Hobbs Act constrains the Court's review of the FCC's 2003 Order.  *See Cacho*, 2024 WL 3293628, at *9 n.8; *Tsolumba*, 2023 WL 6146644, at *5 n.3; *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019).  At this stage, Plaintiff's allegations are sufficient to establish that she is a residential telephone subscriber under the TCPA.

### 2.    Interlocutory Review Under 28 U.S.C. § 1292(b) Is Not Warranted

Pursuant to 28 U.S.C. § 1292(b), this Court has the discretion to "permit an appeal to be taken from an order certified for interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation."  *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).  Certification under § 1292(b) should be granted "sparingly" and "only in exceptional cases." *Kraus v. Board of Cnty. Rd. Comm'rs for Kent Cnty.*, 364 F.2d 919, 922 (6th Cir. 1966)).

Defendant argues "[w]hether 47 C.F.R. § 64.1200(c)-(d) applies to cell phones" is a question of law because it is an issue of statutory interpretation and it is controlling because if the Court finds that "the regulations do not apply to cell phones, Plaintiff has no claims."  (Doc. No. 12 at 86 (citing *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017)).)  Defendant also argues that an immediate appeal would end the case if the Sixth Circuit found that 47 C.F.R. § 64.1200(c)-(d) did not apply to cell cellular telephones.  (*Id.* at 87.)  While Defendant maintains the factors weigh in favor of certification, the Court does not find Defendant has shown a substantial ground for difference of opinion exists regarding the correctness of the decision.

A substantial ground for difference of opinion exists where "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is

not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question."  *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).

This issue is not a novel question or an issue of first impression.  Defendant notes it "is aware that this Court has already reviewed this issue" but "respectfully disagrees."  (Doc. No. 12 at 85 (citing *Tsolumba*, 2023 WL 6146644, at *5).)  However, Defendant's disagreement with the Court's previous decision does not demonstrate a substantial ground for difference of opinion.  Defendant further asserts, "[c]ritically, the courts within this Circuit (and elsewhere) are split."  (*Id.* at 87.)  But as discussed above, the cases from the Middle District of Tennessee that rely on the decision in *Cunningham v. Rapid Response Monitoring Servs.* and deal with the same serial plaintiff are not persuasive—there, the court dismissed the § 227(c) claim because the plaintiff did not plead that the cellular telephone number called was used for residential purposes and acknowledged that in some cases, cellular telephone users may fall within the definition of residential subscriber.  251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017).

There is also no circuit split—the only circuit court to evaluate this issue held that cellular telephones used for personal and business purposes were presumptively residential for purposes of § 227(c).  *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1224-26 (9th Cir. 2022). Defendant argues *Chennette* is not on point because the defendants in that case "conceded that cell phones can be 'residential' for purposes of § 227(c)" and merely argued that the plaintiffs' use of their cell cellular telephones for both personal and business purposes rendered them non-residential.  (*See* Doc. No. 20 at 159; 50 F.4th at 1223.)  However, the Ninth Circuit's holding was premised on the conclusion that § 227(c) could encompass cellular telephones in some circumstances.  50 F.4th at 1224-26; *see also Lyman*, 2024 WL 3406992, at *3.  Additionally, as

noted above, the only two district courts to consider this issue post-*Loper* both concluded that cellular telephone users can be considered "residential telephone subscribers" under § 227(c). *See Cacho*, 2024 WL 3293628, at *9; *Lyman*, 2024 WL 3406992, at *4.

For these reasons, the Court finds that this case is not an exceptional case warranting certification for interlocutory appeal under § 1292(b).

## III.  **CONCLUSION**

For the reasons above, Defendant's motion to dismiss, or in the alternative, to certify for interlocutory appeal (Doc. No. 12) is DENIED.

**IT IS SO ORDERED.**


Date: September 16, 2024                       ___s/ *Bridget M. Brennan*_____
                                               BRIDGET MEEHAN BRENNAN
                                               UNITED STATES DISTRICT JUDGE

16